## IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA

CARLOS GONZALEZ, an individual,

Plaintiff,                                    Case no: 21-Cv-21032 UU

Vs.                                           FBN: 0780715

STERLING JEWELERS, INC., A Delaware

Corporation, and SIGNET JEWELERS, LTD.,

A Foreign Corporation

     Defendants.

_____/

### Amended COMPLAINT

COMES NOW, Carlos Gonzalez, an individual, and hereby sues Sterling Jewelers, Inc. doing

business as "Kay Jewelers" ("Kay"), a Delaware Corporation and Signet Jewelers, Ltd.

("Signet") a Foreign Corporation (Bermuda):

### *Overview:*

1. This is an action by Plaintiff, Carlos Gonzalez, against Sterling Jewelers, Inc. and Signet
   Jewelers, Ltd. pursuant to Florida Statute Section 448.101 and 102 et. seq, to redress
   injury done to him by the Defendants' retaliation against him due to his complaining
   about Defendants' taking money from customers by trickery through the fraudulent
   invoicing of clients. Mr. Gonzalez sues Defendants based upon the fact that as a direct
   result of Mr. Gonzalez reporting that his supervisor, Diana Fonseca, was taking money
   from clients by trickery (Misrepresenting charges on invoices) Mr. Gonzalez was
   terminated.  Within two (2) weeks after Mr. Gonzalez's first complaint, on September 3,
   2020 to the TIPS line as to this theft, it was made clear through the husband of Ms.
   Fonseca that Mr. Gonzalez would be punished for his complaint. "You're going down"
   Ms. Fonseca's husband wrote on Twitter.  The intent behind the termination of Mr.

Gonzalez is exposed to be to punish Mr. Gonzalez for his complaint. The alleged justification for termination, that it was "believed" Mr. Gonzalez was not timely or forthcoming with information as to an alleged irregularity in another store (he has never been to this store in 12 years and had no authority over this store) is proven to be a pretext. The only person who possessed information as to the irregularities, Mr. Abreu, said he did not tell Mr. Gonzalez anything more than he was "suspicious".  This report to Mr. Gonzalez occurred on August 22, 2020 and Mr. Gonzalez reported it the same day to Ms. Fonseca. Thereafter, on Monday the 24th day of August 2020 Mr. Abreu, Mr. Gonzalez, Ms. Fonseca and loss prevention met only to discover Mr. Abreu had no further information other than there were people who looked suspicious. Hence, it was not possible Mr. Gonzalez failed to disclose information he did not possess, or that he acted untimely in reporting information which he disclosed the same day he came into possession of such information. This alleged "suspicion" of Mr. Abreu was not followed up upon until after Mr. Gonzalez's complaint against Ms. Fonseca to TIPS, and not until Ms. Fonseca failed at getting others to invent facts against Mr. Gonzalez.  Defendants attempted to invent facts as to behavior of Mr. Gonzalez which never occurred. Ms. Fonseca on more than one occasion tried to procure lies against Mr. Gonzalez. She suggested to co-employees of Mr. Gonzalez that it was okay to say Mr. Gonzalez acted inappropriately after these employees had already denied Mr. Gonzalez acted improperly. Ms. Fonseca tried to get employees to attest that Mr. Gonzalez treated them badly, screamed at them, disrespected them, sexually harassed them, used the hateful word "nigger", was antagonistic to customers, and engaged in other behavior not complementary to Mr. Gonzalez.  According to Mr. Gonzalez's reviews he was a stellar

employee who was a high wage earner and without any of these discredits to his performance.

## Jurisdiction:

2.   This case was removed from State to Federal Court pursuant to 28 USCA Section 1441(a) and (b). Jurisdiction exists pursuant to Diversity jurisdiction pursuant to 28 USCA 1332 (a).

### *Venue:*

3.   The employment practices hereafter alleged to be unlawful were committed in the Southern District of Florida, Southern Division, in Miami Dade County, Florida.

### *Parties:*

4.   Plaintiff, Mr. Gonzalez, was for all relevant times herein referenced a resident of Miami Dade County, Florida.

5.   Defendant, Kay, is a Delaware Corporation with its corporate headquarters in Akron, Ohio which had ten (10) or more employees during all relevant times alleged herein.

6.   Defendant, Signet, is a corporation domiciled in Bermuda with headquarters in Akron, OH at 375 Ghent Road which had ten (10) or more employees during all relevant times alleged herein.

### *The Parties-Joint Employment:*

7.   Defendants, Signet and Sterling, are two ostensibly separate entities that are highly integrated with respect to ownership and operations.  In the case at bar while Sterling ostensibly pays Mr. Gonzalez and contributes to oversight as to: recruitment, employee evaluation, personnel policies, wage structures, staff schedules, bookkeeping and accounting procedures, benefit plans, payment of wages, income withholding and the hiring and firing of employees, it is Signet who issues standards and further oversight

over: recruitment, employee evaluation, personnel policies, wage structures, benefit

plans, payment of wages, income tax withholding and the hiring and firing of employees.

Together, Sterling and Signet jointly operate Kay in the manner herein stated.  When the

terms "employ", "employed" and "employment", "employee", are used they shall refer to

this joint structure herein alleged.

### *Facts*

8.  Mr. Gonzalez began his employment with Defendants on or about July 1, 2007 and

eventually was promoted to store manager.  As of February, 2019 through the end of his

employment he worked at Dolphin Mall Kay Jewelers. His employee reviews were all

stellar, including that of 2020.

9.  After meeting with a customer of Kay Jewelers on or about August 27, 2020 Mr. Gonzalez

discovered invoices which showed that his regional manager, Ms. Fonseca, was

committing acts of dishonesty in sales' transactions which amounted to criminal and civil

theft of money from Defendants and from customers. She was charging customers for

repairs which did not occur. He also discovered it was likely employees who had not

complained against Ms. Fonseca may also be committing similar theft.

10. On September 3, 2020 Mr. Gonzalez called the TIPS line and complained that Ms. Fonseca

was selling repairs without the customers knowledge (and without the customer actually

getting the service of a repair) in order to reach her standards, get a bonus and get a

promotion. Mr. Gonzalez also complained that Ms. Fonseca was violating wage and

overtime laws by forcing employees to take customer calls on their days' off. (And not

being paid for this time of the employee which was being used by the company).  Mr. Gonzalez also complained of other acts of harassment and unkind behavior of Ms. Fonseca.

11. Then about four (4) days after what was supposed to be Mr. Gonzalez's anonymous complaint Mr. Gonzalez received a call from human resources representative, Ms. Paula Spalla, who tried to minimize Ms. Fonseca's behavior. Ms. Spalla questioned Mr. Gonzalez's credibility by saying these actions being alleged by Mr. Gonzalez against Ms. Fonseca did not appear to be something Ms. Fonseca would do. Ms. Spalla referred to Ms. Fonseca as a "good professional" even after Mr. Gonzalez explained he had the invoices which showed fraudulent charges to customers. (Which produced extra commission for Ms. Fonseca and defrauded the company and the customer).  Mr. Gonzalez repeated his complaints to Mr. Spalla as to Ms. Fonseca's theft. When Mr. Gonzalez questioned Ms. Spalla as to how it was she received information about what was supposed to be an anonymous complaint Ms. Spalla responded she did not need to keep the complaint confidential. Mr. Gonzalez demanded an investigation into his allegations.

12. Ms. Spalla shared this information with Ms. Fonseca. On or about September 7, 2020 Ms. Fonseca told Mr. Gonzalez and a group of others, "it does not matter what you do or what you say, nothing will happen to me."  Ms. Fonseca's confidence in this conclusion of course lead Mr. Gonzalez to understand she was being protected by those with greater authority within the Defendants' corporate structure.  This caused Mr. Gonzalez to have concern that he would be threatened from taking actions against these crimes.

13. Between September 7, and September 18, 2021 Ms. Fonseca shared Mr. Gonzalez's complaint with her husband who then threatened Mr. Gonzalez by saying: "you're going

down…. Are you mad because you didn't get Miami?" (Apparently referring to a perceived opportunity Mr. Gonzalez missed at the Kay Jewelers' store Mr. Gonzalez worked).

14. On or about September 26-28, 2020, while Mr. Gonzalez was out of work with a broken clavicle, Ms. Fonseca attempted to fabricate evidence against Mr. Gonzalez by suggesting in questions to employees that it was okay to admit behavior of Mr. Gonzalez which never occurred. (Such as sexual harassment, racial bigotry, and inappropriate behavior toward staff or customers).

15. Then, on September 30, 2020 Ms. Fonseca called Mr. Gonzalez back to work in the middle of healing from his broken clavicle so she could put in high gear her attempt to ruin Mr. Gonzalez. She scheduled a Zoom meeting with Vice President of Signet, Mr. Eric Helpler. In this meeting Ms. Fonseca attempted to belittle Mr. Gonzalez's performance and leadership capabilities notwithstanding his last review given to him was stelar performance. While Ms. Fonseca was on the Zoom call, Mr. Gonzalez repeated his complaints as to Ms. Fonseca committing fraud against Defendants' customers and against Defendants and asked Mr. Hepler for an investigation.

16.  Mr. Gonzalez was a top manager in the area with a bonus every year.

17. While Mr. Gonzalez was out for surgery on his clavicle from October 7-13, 2020 Ms. Fonseca again tried to fabricate reasons to terminate Mr. Gonzalez by making the same suggestions to employees as per paragraph 14. The H.R. Department tried this dishonest defamation tactic again on or about November 5, 2020 after Mr. Gonzalez was terminated. (Likely seeing the alleged facts to base their termination upon did not exist).

18. Being that her attempts to fabricate evidence against Mr. Gonzalez did not work, Ms. Fonseca fabricated a flimsy plan (flimsy relative to logic) for the termination of Mr.

Gonzalez. Historical facts prove the story invented cannot be true. Mr. Gonzalez was terminated based upon the fact that Defendants "believed" he was not being forthcoming or timely in reporting information relayed to him on about August 22, 2020 by a manager at another Kay Jewelers' store (Mr. Abreu). Mr. Abreu told Mr. Gonzalez he had "suspicions" about certain employees at his store. Mr. Gonzalez reported this information that same day to Ms. Fonseca. Mr. Abreu confirms Mr. Gonzalez knew nothing more from him than what he told him; and that was, he only had suspicions about employees, but not any facts to support the suspicions. Even at a meeting on August 24, 2020 with loss prevention, Mr. Abreu, Mr. Gonzalez and Ms. Fonseca, Mr. Abreu had no more information for loss prevention. Loss prevention even became impatient with Mr. Abreu's lack of facts.   Mr. Gonzalez had no responsibility or authority for overseeing this other store Mr. Abreu managed, nor any further facts about Mr. Abreu's suspicions. The facts prove Mr. Gonzalez could have not been "forthcoming". As Mr. Abreu verified, Mr. Gonzalez possessed no more facts than he disclosed. Also, Mr. Gonzalez did not work at Mr. Abreu's store or know of the employees Mr. Abreu was suspicious of. As well, Mr. Gonzalez was not untimely. He reported all this information relayed to him by Mr. Abreu that same day as delivered to him. No further investigation was initiated about Mr. Abreu's suspicions until after Mr. Gonzalez's complaint to TIPS about Defendants' robbing customers through lies (and Ms. Fonseca).  Ms. Fonseca then fabricated facts against Mr. Gonzalez about his timeliness in reporting the information given to him by Mr. Abreu after she could not get Mr. Gonzalez's co-employees to fabricate facts worthy of terminating Mr. Gonzalez. These lies of Ms. Fonseca caused Mr. Gonzalez to be terminated.

19. The supervisory authorities at Defendants ignored the allegations of theft by Mr. Gonzalez. Instead, they participated in punishing Mr. Gonzalez for behavior which could not have, in any manner, been against the interests of Defendants. Defendants deliberately ignored the theft by Ms. Fonseca against their interests and the customers' interests in favor of supporting a fictional account of deficiencies of Mr. Gonzalez. Mr. Gonzalez's valiant efforts to protect Defendants and the customers was devalued and even punished by personnel who are entrusted to protect the interests of these companies.

20. Mr. Gonzalez was terminated on November 2, 2020, just a few weeks after his initial complaint and without informing him of the allegations or permitting him to clarify the lies with proof he has that they are lies. These protocols for this type of alleged behavior are normally implemented, but were not in this case because Ms. Fonseca desired retaliation against Mr. Gonzalez more than keeping a stelar employee.

21. All justifications for termination are proven to be a pretext for the real reason for termination: retaliation for the complaints of Mr. Gonzalez.  This pretext of Ms. Fonseca is shown by the fact that three (3) days after the termination Defendants attempted to have employees invent/"find" facts which did not exist to try to offer an alternative lie to cover their vindictive behavior.

22. At all times relevant hereto all those involved in the investigation into the reasons for terminating Mr. Gonzalez, and all those involved in the decision to terminate Mr. Gonzalez, had such decision making authority given by Defendants.

## COUNT I
## FLORIDA STATUTE S 448.102: RETALIATION:

9

COMES NOW, Plaintiff, Carlos Gonzalez, pursuant to Florida Statute Section 448.101 and 102 et. seq, sues Defendants, Kay and Signet, for retaliation, realleges as if set forth herein paragraphs 1-22 and states:

23. Plaintiff, Mr. Gonzalez, witnessed violations of law, rule, or regulation relating to fraudulent actions of Defendants. Then, on or about September 3, 7, and 30th and November 2, 2020, Mr. Gonzalez complained and/or voiced disapproval as to these violations of law, rule or regulation to Defendants.

   a. These actions complained of are considered actions of Criminal theft and Civil theft in that: Defendants' agents with managerial authority were knowingly making misrepresentations to clients on invoices which resulted in financial loss to the clients.  This trickery is considered theft from the client pursuant to Section 812.014, Fla. Stat.  And, it is also considered theft to the client pursuant to Section, 772.11. Fla. Stat. These actions are also considered theft to Defendants due to the fact that Ms. Fonseca was misrepresenting that repairs occurred, from which Ms. Fonseca earned a commission. (These repairs were never accomplished).

   b.  Also, Mr. Gonzalez's complaints on September 3, 2020 as to having employees work without their hourly wage being paid (or accounted for), is a voicing of disapproval as to violations of the minimum wage and overtime wage provisions of 29 USC Sections 206-207.

24.  When Mr. Gonzalez made the objections and/or complaints he had a good faith belief at the time that Defendants were acting in violation of law, rule or regulation.  At the time

of the complaints and objections Defendants were actually acting in violation of law, rule or regulation as specified above.

25.   As a direct and proximate result of these complaints, petitions and objections by Plaintiff, Mr. Gonzalez, to Defendants Mr. Gonzalez was adversely affected by Defendants by being terminated from employment and otherwise.

26.   At the time of termination of Plaintiff, Mr. Gonzalez, and at the time of the adverse effect visited upon him by Defendants, Defendants were aware of Mr. Gonzalez's objections to Defendants participating in violations of law, rule or regulation and complaints and voicings of disapproval made against them as to the violations of Federal and State Law aforementioned.

27.   The Plaintiff, Mr. Gonzalez's, discharge from his employment by Defendants and/or the adverse employment action taken by Defendants against Mr. Gonzalez, were causally related to the complaints and petitions Mr. Gonzalez made to Defendants concerning the aforereferenced violations and/or potential violations of laws, rules or regulations.

28.  . When Defendants' agent engaged in the aforesaid actions of terminating Plaintiff, Mr. Gonzalez, and/or adversely affecting his employment, he/she was acting within the scope of his/her authority as Supervisor of Plaintiff, which was a supervisory position at Defendants and hence, he/she acted in a supervisory capacity for Defendants.

29.   As a direct and proximate result of the actions of the Defendants, Plaintiff, Mr. Gonzalez, has suffered damages, including, but not limited to emotional pain, suffering, inconvenience, mental anguish, loss of dignity, loss of enjoyment of life and lost wages.

30.  Any alleged legitimate, non-discriminatory reason for discharge and/or adverse treatment are a mere pretexts for the actual reason for termination: retaliation for Plaintiff complaining about Defendants' violations of these aforementioned laws, rules and/or regulations.

## PRAYER FOR RELIEF

Plaintiff, Carlos Gonzalez, hereby demands that the Defendants reinstate Plaintiff to the position he had with the same salary level which Plaintiff would have had absent Defendants' discriminatory treatment or, alternatively award front pay for the years he would have worked absent the defendants' discriminatory treatment and award back pay and loss of employment benefits to the Plaintiff for the time he would have worked and/or enjoyed benefits absent the Defendants' discriminatory treatment.  Additionally, Plaintiff hereby demands that the Defendants pay compensatory damages for Plaintiff's, physical and emotional pain and suffering, restrain such unlawful actions, including the adverse employment affects and declare them unlawful, and all reasonable attorney's fees incurred in connection with this action and grant such additional or alternative relief as may appear to the Court to be just and equitable.

## Jury Trial Demand

Plaintiff, Carlos Gonzalez, demands a trial by jury on all issues trialable of right by a jury.

Respectfully Submitted,

*Law Office of Joseph S. Shook, P.A.*

By:_____s/s_____

Joseph S. Shook, Esq., FBN: 0780715, Attorney for Carlos Gonzalez

75 Valencia Ave., #4th Floor

Coral Gables FL, 33134

(305) 446-4177

Facsimile (305) 446-4565

shooklaw@bellsouth.net

### *Certificate of Service*

 I hereby certify that on 29th day of April, 2021 I electronically filed the forgoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing is being served this day on all counsel of record, or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically notices of Electronic Filing.

By:_____s/s_____

Joseph S. Shook, Esq.

### **Service List**

Counsel for Sterling Jewelers, Inc.

Liana R. Hollingsworth

Florida Bar no: 0076930

Vorys, Sater, Seymour and Pease, LLP

200 Public Square, Suite 1400

Cleveland Ohio 44114

Phone (216) 479-6152

Fax: (216) 937-3406

Email: Lrhollingsworth@vorys.com